## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**RONALD M. DOLIN**

      Plaintiff,

v.                                                    Case No. 1:25-cv-00128-WJ-JFR

**TRIAD NATIONAL SECURITY, LLC,**
**And TECHSOURCE, INC.**

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER GRANTING TRIAD'S<br>MOTION TO DISMISS IN PART</u>

**THIS MATTER** comes before the Court upon Defendant Triad's motion to dismiss the complaint **[Doc. 1]** ("Complaint") under Federal Rule of Civil Procedure 12(b)(6) **[Doc. 6]** ("Motion") and Plaintiff's response in opposition to the motion and motion for leave to amend the complaint **[Doc. 11]** ("Response").  This matter is also before the Court on Defendant TechSource, Inc.'s Rule 12(b)(6) defense of failure to state a claim on which relief can be granted.  **[Doc. 8 at 5, ¶ 1].**  The Complaint sets forth federal civil rights claims and state tort claims arising from a determination that Plaintiff, a former Los Alamos National Laboratory (LANL) employee, may not publish a book based on his experience at LANL due to national security concerns.

The Court, having reviewed the parties' submissions and applicable law, concludes that the Complaint fails to state a claim under the First and Fourth Amendments pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  Accordingly, the Motion **[Doc. 6]** is **GRANTED** as to Plaintiff's civil rights violations claims.  Leave to amend the Complaint to add a request for declaratory and injunctive relief regarding Plaintiff's rights to publish his book is, accordingly, **DENIED** because Plaintiff has not sufficiently pled an underlying cognizable legal

claim.

The Complaint also fails to sufficiently plead claims of wrongful termination and prima facie tort under New Mexico law.  Therefore, the Motion is **GRANTED** as to these claims. Plaintiff's proposed amendments do not resolve the pleading deficiencies.  Leave to amend **[Doc. 11]** these claims shall be **DENIED as futile**.

The Complaint sufficiently pleads a tortious interference with contract claim.  Therefore, the Motion will be **DENIED** as to this claim.  Leave to amend this claim is **GRANTED**.

## I.    BACKGROUND

Plaintiff Ronald M. Dolin worked at Los Alamos National Laboratory (LANL) as an engineer and scientist from 1983 to 2018, when he retired.[1]  Defendant Triad National Security, LLC, contracts to operate LANL on behalf of the Department of Energy (DOE) and the National Nuclear Security Administration (NNSA).  In retirement, Plaintiff became employed by Defendant TechSource, a contractor that provides Triad with scientific and technical employees.  Compl. ¶ 27.

In 2021, a publisher approached Plaintiff to write and publish a book concerning his experience working in homeland security at LANL.  In July 2021, before writing the book, Plaintiff contacted the LANL Classification Officer, Diana Hollis, to determine the protocol for LANL to review the book for classified information on behalf of the DOE and NNSA.  Ms. Hollis told Plaintiff that once a final edit of the book was complete, he should contact the Classification Office regarding a review for classified information.  *Id.* ¶ 6.

On October 17, 2022, Plaintiff contacted Ms. Hollis to begin the classification review process.[2]  Plaintiff's manuscript was transmitted to the Classification Office for review and

---

[1]  The facts in this section are taken from the Complaint, which for purposes of its Fed. R. Civ. P. 12(b)(6) review, the Court must accept as true.  *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *In re Gold Res. Corp. Secs. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).

[2] Although the Complaint does not expressly state as much, it is implied that at some point before the manuscript was

Plaintiff reminded Ms. Hollis and her staff members about the guidance she had provided him concerning protocol. *Id.* ¶ 7. On November 7, 2022, Plaintiff met with the LANL Security Investigation Team (SIT) and his "division leader." *Id.* ¶ 8. At the meeting, Plaintiff was told that he was "in jeopardy of some sort for transmitting a book into the public domain" prior to review for classified material. *Id.* According to the Complaint, this rebuke indicates that Ms. Hollis neglected to inform the SIT that she instructed Plaintiff to submit the book to a publisher prior to review. *Id.*

Upon review of the manuscript, the Classification Office asked Plaintiff to redact one word for security reasons. Plaintiff removed the word and, according to instruction, returned the revised manuscript to the Classification Office as an unclassified document. On December 21, 2022, "the SIT determined that the release of the book into the public domain was a high security related incident, but that Plaintiff had done nothing wrong and he was not cited with any security infraction." *Id.* ¶ 10. On January 9, 2023, Plaintiff was informed — without any express justification — that his book was not approved for publication. Plaintiff proceeded to try to obtain permission to publish his book but did not receive it. Plaintiff was told that Ms. Hollis had determined that the book was classified and that he could not appeal the determination. *Id.* ¶ 14.

On or about April 20, 2023, three days after the adverse publication decision, Plaintiff's "security clearance was revoked, his contract with Triad was terminated, and he was fired by [TechSource]." *Id.* ¶ 15. Plaintiff has not been provided a reason for his termination or the decision not to permit publication of his book. LANL offered CIA and FBI concerns as a reason for prohibiting publication of the book, though, as far as Plaintiff is aware, neither agency has in fact expressed concerns. *Id.* ¶ 13.

---

submitted to the Classification Office for review, a copy was transmitted to a publisher.

The complaint sets forth four claims based on these events. Plaintiff alleges Defendants violated his rights under the First and Fourth Amendments of the United States Constitution without justification when his book was deemed unpublishable. Plaintiff also asserts claims of wrongful termination, prima facie tort, and tortious interference with contract. Plaintiff seeks to recover damages in the form of lost income — from employment and from the royalties anticipated from prospective book sales — and reputational injury and emotional distress.

Triad moves to dismiss each of Plaintiff's claims on the basis that it did not employ Plaintiff; it is not a government actor; no *Bivens* claim lies in a determination that a book contains classified information and cannot be published; and the Complaint fails to allege that Triad acted solely to harm Plaintiff as required for an interference with contract claim.

### A. Motion for Leave to Amend the Complaint

As an exhibit to his Response, Plaintiff submits a proposed amended complaint. [Doc. 11]. The amended complaint seeks to add allegations that Plaintiff asserts clarify the contours of his prima facie tort claim and Triad's role and bolster the complaint's factual allegations. The amended complaint also seeks to add a claim for declaratory relief, which is apparently derivative of Plaintiff's civil rights violations claims. *Id.* ¶¶ 31–34. A declaration authored by Plaintiff is submitted in support of the Complaint's allegations. *Id.* Ex. B. The court declines to consider this sworn statement outside the Complaint in its Rule 12(b)(6) review.[3]

---

[3] "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *see also Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("The Court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether *the plaintiff's complaint alone* is legally sufficient to state a claim for which relief may be granted.") (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)) (emphasis in original)). There are certain limited exceptions to that rule, and the Tenth Circuit has said that an exhibit attached to a complaint "is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal" if the document is authentic, central to the complaint, and the opposing party does not dispute its authenticity. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). The Tenth Circuit has also, however, indicated that that exception does not apply to affidavits. *Id.* In any case, even if Plaintiff's affidavit were properly considered, it would not alter the Court's conclusion regarding the sufficiency of the Complaint.

## II.    DISCUSSION

### A.  Legal Standard

#### i.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the facts alleged in the Complaint must be sufficient to establish a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  For purposes of its Rule 12(b)(6) review, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *In re Gold Res. Corp. Secs. Litig.*, 776 F.3d at 1108. "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  "[I]f as a matter of law, 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but unavailing one."  *Id.* at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

#### ii.    Amending the Complaint

After the time to amend a complaint as a matter of course has lapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Generally, leave to amend shall be freely given when justice so requires.  *Id.*  However, leave may be denied where a proposed amendment would not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Gutierrez v. Johnson & Johnson Int'l, Inc.*, 601 F. Supp. 3d 1007, 1018 (D.N.M. 2022) ("To determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6).") (quoting *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla.

2011))).  The burden to show futility rests on the party opposing amendment.  *Id.*

### B.  Sufficiency of the Allegations in the Complaint

#### i.  The Complaint Does Not State a Claim for Relief Under *Bivens*.

Plaintiff asserts that his rights under the First and Fourth Amendments were violated when LANL's Classification Office determined on behalf of the DOE and NNSA, without justification, that his book could not be published.  Compl. ¶ 21.  The Complaint does not articulate what legal framework provides the basis for Plaintiff's claims.  Triad suggests a *Bivens*-type claim may be inferred.  Mot. at 7.  Plaintiff's response to the Motion does not appear to refute Triad's characterization of his theory of liability but instead to distinguish the legal authority Triad cites from the Supreme Court's *Bivens*-related precedent.  Therefore, the Court assumes Plaintiff intends to assert a cause of action under *Bivens*.

*Bivens* implies a federal cause of action for monetary damages where federal officers are found to have violated an individual's constitutional rights.  403 U.S. at 397.  In *Bivens*, the Court recognized a federal remedy for a Fourth Amendment violation involving a federal officer's use of excessive force.  *Id.*  In subsequent cases, the Court has expanded the implied cause of action to only two additional contexts, in brief: the Fifth Amendment's Due Process Clause,  *Davis v. Passman,* 442 U.S. 228 (1979), and the Eighth Amendment's Cruel and Unusual Punishments Clause, *Carlson v. Green*, 446 U.S. 14 (1980).

In recent years, the Supreme Court has steadily and increasingly curtailed *Bivens* liability, noting that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)); *see also Longsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024) (predicting that *Bivens*, in due course, will become "a relic of the 20th century").  This is because "creat[ing] and enforc[ing]

a cause of action for damages against federal officials in order to remedy a constitutional violation"
bears on "separation-of-powers principles." *Ziglar*, 582 U.S. at 133.  Against the backdrop of the
Court's growing skepticism of the soundness of the cause of action, the Court has prescribed a
two-step approach to assess a *Bivens*-type claim's viability.  A district court's task is to first inquire
(i) whether the claim arises in a "'new context' or involves a 'new category of defendants.'"
*Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (quoting *Correctional Servs. Corp. v. Malesko*, 534
U.S. 61, 68 (2001).   If the answer is yes, the court asks (ii) whether there are any "special factors
that counsel hesitation" in expanding the cause of action.  *Id.*  "If there are—that is, if [there is]
reason to pause before applying *Bivens* in a new context or to a new class of defendants" the
request must be rejected.  *Id.*  The answer to each of these questions, in this case, is yes.  Therefore,
a *Bivens* cause of action cannot stand.

Plaintiff does not offer, and the Court is not aware of, any Supreme Court or Tenth Circuit
precedent supporting a *Bivens* claim for First and Fourth Amendment violations of a federal
contractor based on classification determinations resulting in the prevention of a book's
publication.  Indeed, the Tenth Circuit has signaled that a *Bivens*-type cause of action is unavailable
in the First Amendment context point-blank.  *Wellington v. Daza*, No. 21-2052, 2022 WL 3041100,
at *1 n.1 (10th Cir. Aug. 2, 2022) (unpublished) (Holmes, J.) (stating that the Supreme Court, at
minimum, "cast[] grave doubt on any assumption that [a plaintiff] has a *Bivens* remedy for a First
Amendment violation"; addressing a claim that agents seized "publications and literature 'due
solely to their content'").  Therefore, Plaintiff asks the Court to recognize a Bivens-type claim in
what appears to be a novel context.  Supreme Court precedent cautions against doing so.  *See*
*Malesko*, 534 U.S. at 74.

Novelty alone is a "special factor that forecloses relief."  *Egbert*, 596 U.S. at 493.  Another

special factor militating against relief in the instant case is the national security concerns at the center of the Classification Office's process and determination. In *Ziglar v. Abbasi*, the Supreme Court held that expanding *Bivens* to a challenge of the detention policy at issue would necessitate "an inquiry into sensitive issues of national security," and counseled against the proposed expansion, reasoning that allowing such inquiry would "assume dimensions far greater than those present in *Bivens* itself" or its progeny. 582 U.S. at 142. The Tenth Circuit adopted similar reasoning in a case involving a First Amendment challenge to Boeing's denial of a security clearance. *Beattie v. Boeing Co.*, 43 F.3d 559, 566 (10th Cir. 1994). The Court found that the "unreviewability of the security clearance decision" was a "special factor counselling hesitation, which preclude[d]" recognition of a *Bivens* claim. *Id.* (quotation omitted). Similarly, here, to address Plaintiff's challenge of the classification decision would presumably require wading into LANL's reasons for the classification determination — a result at odds with the security purpose of the classification process.[4]

Further counseling against the availability of relief in this instance, the Supreme Court has expressly declined to extend *Bivens* liability to private corporations acting under color of federal law. *Malesko*, 534 at 71. In *Malesko*, the Court explained that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Id.* at 70. To that end, the

---

[4] Acknowledging the governmental interest in preventing dissemination of classified information, courts have widely held that prepublication classification review is constitutional. *Wilson v. McConnell*, 501 F. Supp. 2d 545, 551 (S.D.N.Y. 2007), *aff'd sub nom. Wilson v. C.I.A.*, 586 F.3d 171 (2d Cir. 2009) ("[A] person's First Amendment right to freedom of speech yields to the government's 'compelling interest' in preventing the publication or dissemination of classified information.") (citing *Snepp v. United States*, 444 U.S. 507, 509 n. 3 (1980)); *see Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975). Furthermore, courts have recognized government agencies' experience and expertise in matters concerning national security. *Edgar v. Haines*, 2 F.4th 298, 304 (4th Cir. 2021) ("Th[e] prepublication review process . . . relies on the agency's judgment about what is sensitive and detrimental to the national security . . . rather than the employee's independent judgment. This is because the agency has a 'broader understanding of what may expose classified information and confidential sources.'") (quoting *Snepp*, 444 U.S. at 509)). The Court is not persuaded that a cause of action should be implied for monetary damages arising out of a process that courts have expressly found comports with the First Amendment and that revolves around sensitive agency determinations.

Court found that a constitutional tort remedy was "foreclosed" as against a private entity like Correctional Services Corporation, which contracted with the Bureau of Prisons to operate a federal prison facility. *Id.* at 71. By that same token, *Malesko* precludes constitutional tort liability on the part of Triad, which contracts with the DOE and NNSA to operate LANL. *See Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702 (S.D.N.Y. 2008) (holding that "[a]s a private corporation operating under contract with the federal government, [defendant] [was] in all material respects in the same position as the defendant in *Malesko*, and . . . [was] therefore not subject to a *Bivens* action"). Because *Bivens* provides no avenue to relief under these circumstances, dismissal is warranted as to Plaintiff's constitutional claims against Triad. *See Menteer v. Applebee*, 196 F. App'x 624, 627 (10th Cir. 2006) (unpublished) (affirming dismissal of *Bivens* claim against federal contractor pursuant to *Malesko*); *Nietzke*, 490 U.S. at 326 ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Moreover, the Supreme Court has held that the purpose of *Bivens* is to hold individual officials responsible for their unconstitutional acts. *Ziglar*, 582 U.S. at 140 (holding that "a *Bivens* claim is brought against the individual officer for his or her own acts, not the acts of others"); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994) (holding that there is no *Bivens* cause of action against federal agencies – only officials); *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (affirming dismissal of *Bivens* claims against all defendants except for the "individual federal officials in their individual capacities"). A *Bivens* claim may not be brought against private entities for the acts of their employees. To plead a successful *Bivens* claim, a plaintiff must allege an individual violated his constitutional rights. *Iqbal*, 556 U.S. at 676. Plaintiff has not asserted his constitutional claims against any individual. This presents a further obstacle to relief.

Plaintiff's sole assertion concerning the Fourth Amendment is that his right against

unreasonable seizure was violated when the classification department determined that his book could not be published. This allegation fails to satisfy federal pleading standards. *See* Fed. R. Civ. P. 8(a)(2) (a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Parker v. Landry*, 935 F.3d 9, 13–14 (1st Cir. 2019) (merely "parrot[ing] the contours of a cause of action" will not suffice under Rule 8(a)(2)) (citing *Twombly*, 550 U.S. at 555)). Further, to prevail on a Fourth Amendment claim, a plaintiff must establish a seizure, that the seizure occurred as the result of "an intentional acquisition of physical control," and that the seizure was unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). The Complaint does not allege that a seizure occurred. Lacking this essential component of his prima facie case, Plaintiff's Fourth Amendment claim must be dismissed.[5]

Plaintiff proposes to add a claim for a declaratory judgment that he has a right to publish his book and "an injunction prohibiting Defendants from interfering or obstructing the publication of his book." Doc. 11 at 9–10, ¶¶ 31–34. A request for a declaratory judgment is not an independent claim for relief but is derivative of a federal cause of action. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction."); *Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (affirming dismissal of a claim for declaratory judgment where the plaintiff did not assert a "valid federal cause of action . . . independent of any request for declaratory relief"). Given that Plaintiff states no viable underlying federal cause of action, his claim for declaratory relief would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The same goes for Plaintiff's request

---

[5] Plaintiff's proposed amendments to his civil rights claims do not alter the analysis. Plaintiff seeks to clarify that the property underlying his Fourth Amendment claim is "the book he wrote," add that the Classification Office is a constituent of Triad, and add that Triad acted on behalf of the Department of Energy *and the NNSA* (italicized text reflects Plaintiff's proposed additions). He also proposes to add that "the factual statements in Mr. Dolin's book can be found on the internet, social media, or as otherwise released by LANL *through Triad or others* in the past" (italicized text reflects Plaintiff's proposed additions). Doc. 11 ¶¶ 20–22. None of these proposed amendments cure the pleading deficiencies described herein.

for injunctive relief.  *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018) ("Injunctive relief is not a separate cause of action; rather it is one form of relief for the other legal violations alleged.").  Leave to amend the Complaint in these respects shall be denied as futile.

### ii.    The Complaint Does Not State a Claim for Wrongful Termination.

Mr. Dolin asserts he was wrongfully terminated in retaliation for "having brought to light the policy and procedure violations of the Triad/LANL Classification Office in advising Mr. Dolin to release his book to the publisher to finalize i[t] before classification review," and that his book was rejected for publication "to attempt to cover LANL's own policy infractions."  Compl. ¶ 19.[6] Triad argues it may not be held liable for wrongful termination because it was not Mr. Dolin's employer.  Mot. at 4–6.  Triad's Motion applies New Mexico law, and Mr. Dolin does not dispute its application; accordingly, the Court will assume it applies.

New Mexico common law recognizes a cause of action "which allows a discharged at-will employee to recover in tort when his discharge contravenes a clear mandate of public policy." *Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 375 (N.M. 1989)).

> For an employee to recover under this . . . cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn.

*Vigil v. Arzola*, 699 P.2d 613, 620 (N.M. Ct. Ap. 1983), *rev'd on other grounds*, 687 P.2d 1038 (N.M. 1984).  Essential elements of this claim are therefore: (i) the plaintiff's at-will employment and (ii) the employer's violation of a clear mandate of public policy.  An employee "must also

---

[6] There is no discernible connection between the second wrong alleged – the rejection of Mr. Dolin's book for publication – and a claim for wrongful termination.  Thus, the Court will disregard it as irrelevant to the analysis of this claim.

show a causal connection between his actions and the retaliatory discharge by the employer." *Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 850 P.2d 996, 1006 (N.M. 1993).

The complaint fails to allege that Mr. Dolin was employed by Triad. *See Silva v. Am. Fed'n of St., Cnty. & Mun. Emps.*, 37 P.3d 81, 83, 85 (N.M. 2001) ("The law of retaliatory discharge in New Mexico must be read against the backdrop of the doctrine of at-will employment."); *Weise v. Wash. Tru Sols., L.L.C.*, 192 P.3d 1244, 1254 (N.M. Ct. Ap. 2008) ("At-will employment status is an essential element of any successful retaliatory discharge claim."). Rather, the Complaint indicates that Mr. Dolin was employed by TechSource, which facilitated his work with Triad on a contract basis. As a general principle, employees of subcontractors do not constitute employees of a general contractor. *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 933 (1984) ("[A]s far as the employees of subcontractors are concerned, a general contractor does not act as an employer."). The Complaint suggests that Mr. Dolin's arrangement was no different. Mr. Dolin asserts that he was employed by TechSource. Compl. ¶ 3 ("After his retirement from LANL, Plaintiff was *employed by Defendant Tech Source* . . . ."). TechSource, in turn, contracted with Triad to provide it with scientific and technical workers like Mr. Dolin. *See* Mot. at 15; Compl. ¶¶ 27–28. And in fact, Mr. Dolin alleges that he worked for Triad on a contract basis. *See id.* ¶ 15 (alleging that on April 17, 2023, Mr. Dolin's "*contract with Triad* was terminated, and he was *fired by Techsource, Inc.*") (emphases added). Therefore, the well-pled facts do not indicate that Triad and Mr. Dolin were in an employment relationship — a prerequisite to Mr. Dolin's wrongful termination claim.

Mr. Dolin proposes to remedy this deficiency, asserting by way of proposed amendment, that Triad and TechSource "jointly employed" Mr. Dolin. Doc. 11 at 8 ¶ 19. This sort of barebones conclusion, absent any supporting factual allegations, is arguably insufficient to withstand

dismissal under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678 (a complaint cannot rely on "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive dismissal); *Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (unpublished) ("wholly conclusory" allegation would not save complaint from dismissal pursuant to Fed. R. Civ. P. 12(b)(6)).  That said, the Court recognizes that questions of employment relations are typically better resolved on the evidence.  So, the Court highlights another dispositive deficiency in the Complaint.  Plaintiff does not allege that his termination violated public policy.[7]  *See Silva*, 37 P.3d at 83.

Mr. Dolin claims that he was terminated because he "brought to light the policy and procedure violations of the Triad/LANL Classification Office in advising [him] to release his book to the publisher to finalize i[t] before classification review."  Compl. ¶ 19.  Plaintiff does not articulate a public policy.  Nevertheless, generously construing the Complaint, Plaintiff's theory appears to be that Triad and TechSource retaliated against him for blowing the whistle on a breach of a policy or procedure allegedly established by Triad/LANL.  Still, there is no asserted connection between this alleged "policy and procedure violation" and the general public.  Indeed, the only surmisable effect of the Classification Office's alleged errors is the deprivation of prospective readers from the potential benefit of Mr. Dolin's authorship.[8]  This omission is fatal to

---

[7] If, including for reasons raised *sua sponte*, "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile," a claim should be dismissed under Rule 12(b)(6).  *See Hall*, 935 F.2d at 1110; *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (affirming *sua sponte* dismissal of complaint "on alternative grounds including failure to state a claim").

[8] Such an impact falls well short of employment actions New Mexico courts have recognized to bear on matters of public policy.  Beyond legislation — "the strongest indicator[] of a state's public polic[y]" — New Mexico courts have found that public concern is implicated where, for example, an employee was fired for reporting the misuse of federal and state money.  *Vigil v. Arzola*, 699 P.2d 613, 619, 621 (N.M. Ct. Ap. 1983), *rev'd on other grounds*, 687 P.2d 1038 (N.M. 1984).  Courts have also indicated that termination for refusing to commit a crime or aiding in the investigation and prosecution of a crime, may likewise support a retaliatory discharge claim.  *Shovelin*, 850 P.2d at 1008–09.  By contrast, the New Mexico Supreme Court has declined to recognize a public policy creating a "common law right to political expression" or "encouraging a citizen to pursue and hold public office."  *Id.* at 1009. With this precedent in mind, an alleged procedural error by classification personnel that prevents publication of a personal memoir does not carry the required public import.

Plaintiff's wrongful termination claim.

###    iii.    The Complaint Does Not Sufficiently Allege a Prima Facie Tort.

Mr. Dolin next asserts that "Defendants, by and through their employees and agents committed a *prima facie* tort against Plaintiff, using what appears to be legal means with the intent to harm and injure him." Compl. ¶ 24. He further alleges that "[t]he actions of the Defendants were taken intentionally with the intent to harm Mr. Dolin, and there was no justification for the actions. *Id.* ¶ 25. Triad moves to dismiss this claim, alleging (i) that the Complaint fails to identify what acts were lawful as opposed to the conduct that allegedly violated state and federal law and (ii) that the claim is duplicative of the other allegations in the complaint. Mot. at 12. In response, Mr. Dolin clarifies that the alleged wrong is the classification decision – not his termination. Doc. 11 at 3 ¶ 11.

To assert a claim of prima facie tort under New Mexico law, a plaintiff must show that a defendant (i) intentionally committed a lawful act; (ii) with the intent to injure the plaintiff; (iii) the plaintiff was injured as a result of the intentional act; and (iv) there was no justification for the act. *Lexington Ins. Co. v. Rummel*, 945 P.2d 992, 995 (N.M. 1997). New Mexico courts have emphasized the limited scope of this tort. *Id.* "Prima facie tort was not intended to provide a remedy for every intentionally caused harm." *Id.* "Rather, the cause of action provides a remedy for acts committed with an intent to injure the plaintiff and without justification." *Id.* "Therefore, balancing the malicious intent of the defendant against both the justifications for the injurious act offered by the defendant and the severity of the injury is a necessary step in assessing whether a prima facie tort has been committed." *Id.* "Where there is no evidence of intent to injure, there is no need to proceed with the balancing test." *Id.*

14

Triad contends that the complaint fails to allege injury based on *lawful* conduct by defendants. Rather, Triad asserts that the same conduct that forms the basis for Mr. Dolin's civil rights claims serves as the predicate for Mr. Dolin's tort claim. The argument goes that, "[a]ccepting as true Plaintiff['s] allegations that [Triad] acted *unlawfully*, then [Mr. Dolin] cannot allege the same conduct was *lawful* in their prima facie tort claim." *Border Area Mental Health, Inc. v. United Behavioral Health, Inc.*, 331 F. Supp. 3d 1308, 1318 (D.N.M. 2018) (applying New Mexico law). The court disagrees, however, that the thrust of New Mexico case law on this issue countenances overlapping facts as a basis for dismissal.

Triad may well be correct that if Mr. Dolin were to succeed on his constitutional claims, prima facie tort recovery would not be available. *See Beaudry v. Farmers Ins. Exchange Farmers Grp., Inc.*, 388 P.3d 662, 669 (N.M. Ct. Ap. 2016), *rev'd on other grounds*, 412 P.3d 1100 (2018) (explaining that a lawful act is "an essential element of prima facie tort" and holding that a contract termination "deemed *lawful* under contract principles" seems "logically irreconcilable" with "an *unlawful* contract termination in prima facie tort") (emphasis in original)). But at this stage in the proceedings, that the same factual basis serves as the predicate for multiple legal claims is not dispositive. *See Schmitz v. Mountain Highlands, LLC v. Hendricks*, No. 8-CV-239, No. 2009 WL 2486047, at *2–3 (D.N.M. July 30, 2009) (allowing prima facie tort and interference with prospective contract claim to proceed but warning both claims would not be submitted to a jury "because of the factual overlap between" the two claims and "because of prima-facie tort's nature as a last-resort doctrine"). And indeed, the New Mexico Supreme Court has held that prima facie tort may be pled in the alternative. *Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990). Therefore, this asserted defect is not fatal to the complaint.

Nevertheless, the complaint faulters at element two of Plaintiff's prima facie case. The

complaint is devoid of any allegations that would allow a factfinder to infer that Defendants acted with the specific intent to harm Mr. Dolin by determining that his book could not be published. *Schmitz v. Smentowski*, 785 P.2d at 737–38 (prima facie tort "requires that the defendant not only intend the act, but that he also intend the harm.");  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" ); Restatement (Second) of Torts, § 870 cmt. b (1977) ("An intentional tort is one in which the actor intends to produce the harm that ensues; it is not enough that he intends to perform the act.").  Rather, the Complaint suggests that LANL's classification department deemed the release of Mr. Dolin's book into the public domain a "high security related incident" and for that and other legitimate national-security-related reasons prevented its publication.  Meanwhile, Plaintiff seeks to place significance on the fact that the classification office did not provide him with a "valid justification" for the classification decision. Indeed, in certain contexts—such as employment discrimination — lack of justification may imply nefarious intent.  But the nature of national security necessitates some secrecy; for LANL to disclose the details of the classification review process to a former employee would subvert its purpose.

Mr. Dolin's seeks to cure this deficiency by amending the complaint to state that "Defendants . . . kn[ew] the actions in denying the publication of his book would cause harm" and "[t]he acts harmed plaintiff."  Doc. 11 at 9 ¶ 24.  Still, awareness that one's act will bring about harm does not equate to a specific intent to cause harm, as required under New Mexico tort law. New Mexico Courts have expressly held, "intent to commit the act which results in injury" is distinct from "intent to injure," likening the intent requirement to malice. *Rummel*, 945 P.2d at 995–996 ("Plaintiffs bear a heavy burden to establish intent to injure" and "must produce more

than a showing that the injury is a natural and foreseeable consequence of the act"); *Herrera v. Santa Fe Pub. Schs.*, 41 F. Supp. 3d 1027, 1091 (D.N.M. 2014) ("'Intent to injure' is more than mere insensitivity and is used synonymously with 'malice' within New Mexico's prima facie tort jurisprudence.") (quoting *Rummel*, 945 P.2d at 995)). The Complaint alleges that the Classification Office determined that the disclosure of the book's contents into the public domain prior to classification review gave rise to a high security risk. Compl. ¶ 10. This allegation indicates that LANL was motivated by the legitimate purpose of protecting national security interests, rather than an intent to injure Mr. Dolin. *See Rummel*, 945 P.2d at 996 (dismissing prima facie tort claim where the "factual allegations indicate[d] that [alleged tortfeasor] was motivated by the legitimate business purpose of reducing its own liability and the liability of its insured . . . , rather than by an intent to injure [plaintiff]"). That defendants were aware Mr. Dolin would suffer consequences from his inability to publish his book does not, without more, raise a plausible inference that they acted with an intent to inflict specific harm. Therefore, the Court will not allow leave to amend on this basis.

### iv. The Complaint Sufficiently States A Claim For Intentional Interference With Contract.

Mr. Dolin alleges that Triad "tortiously interfered with Plaintiff's contract with TechSource, without justification," when it "instructed Tech Source to terminate Plaintiff" to "protect its errors in the classification office from disclosure and to shift blame to Plaintiff." Compl. ¶¶ 28–29. Triad argues that Mr. Dolin's claim fails as a matter of law because he does not assert that Triad acted without privilege or justification insofar as the Complaint lacks facts supporting that Triad acted with an improper motive and solely to harm him. Doc. 6 at 14–15; Doc. 15 at 6.[9] The Court finds that the Complaint's allegations are sufficient to withstand Rule

---

[9] Triad also asserts that Mr. Dolin's "only alleged relationship with TechSource is as his former employer, and Dolin

12(b)(6) dismissal.

A successful intentional interference with contract claim requires that: (i) the defendant knew about the contract between the plaintiff and another party; (ii) performance of the contract was refused or the plaintiff was unable to fulfill the contract's obligations; (iii) the defendant played an active and substantial role in causing the plaintiff to lose the benefits of the contract; (iv) the plaintiff suffered damages as a result of the breach; and (v) "the defendant induced the breach without justification or privilege to do so." *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 767 (N.M. 2012).

The fifth element — that the defendant lacked justification or privilege to cause the breach — may be demonstrated with evidence that the defendant acted with an improper motive or by improper means. *J.D. Heiskell Holdings, LLC v. Willard Dairy, LLC*, 750 F. Supp. 3d 1289, 1296 (D.N.M. 2024). Contrary to Triad's contentions, improper means or motive are not pleading requirements, and improper motive need not be the sole motive for instigating the breach. *Id.*; *Martin v. Franklin Capital Corp.*, 195 P.3d 24, 27 (2008). "If the defendant interfered in some way with the plaintiff's contract, the inquiry, in the end, [is] to determine the defendant's primary motivation for the interference." *Martin*, 195 P.3d at 27. "If it was primarily improper, then the defendant has no privilege"; "[i]f it was primarily proper, then liability should not attach." *Id.*

With this understanding of the law, the Court cannot conclude that Mr. Dolin "can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 546. In rebutting Mr. Dolin's allegations regarding motivation, Triad argues that it "is entitled to determine for itself whether it wants a subcontractor's employee to continue working on LANL

nowhere in the complaint alleges that he was anything but an at-will employee." Mot. at 13. That is not actually the case, however. The Complaint alleges that Triad interfered with Mr. Dolin's "contract with Tech Source." Compl. ¶ 28. This is sufficient to allege that TechSource contracted with Mr. Dolin.

matters" and may terminate its relationship with an employee regardless of whether the employee has received a security citation. Mot. at 15. Triad also argues that "[i]mplementing classification rules related to LANL's work provides a plain and obvious justification and privilege for Triad's work." Doc. 15 at 6. In New Mexico, however, as *Martin* makes clear, an improper motive need not be the sole reason for a defendant's conduct but rather a "primary" reason. 195 P.3d at 27. The Court cannot determine at the pleading stage what was Triad's primary motivation for requesting Mr. Dolin's termination.[10] Therefore, this claim will be allowed to proceed.

Mr. Dolin seeks to amend his complaint to bolster the allegations regarding Triad's motive for engineering his termination. *See* Doc. 11 at 9 ¶ 28 (proposing to include as a motive "prevent[ing] an appeal of the classification decision"). Because this is Plaintiff's first motion for leave to amend and this allegation serves to bolster an essential element of Plaintiff's claim — that Triad acted without privilege or justification — the court will allow leave to amend the complaint's allegations in support of this claim. Fed. R. Civ. P. 15(a) (providing district court with the discretion to allow a party leave to amend its pleadings, "when justice so requires"). Furthermore, it is not inconsistent with the other bases provided in the complaint and, therefore, defendants are unlikely prejudiced by its inclusion after the opportunity for responsive pleadings has lapsed. *See United States v. Copar Pumice Co., Inc.*, No. 09-CV-1201, 2013 WL 9601485, at *6 (D.N.M. July 30, 2013) (permitting leave to amend where new allegations in the amended complaint "d[id] not change the basic theory, or rely on different underlying facts" and therefore would not cause defendants "undue prejudice in preparing their defense") (quotations omitted).

---

[10] As another court in this district reasoned, "a plaintiff . . . still without the benefit of discovery . . . is at a disadvantage in obtaining the details of the relationship between its contractual partner and the third party it is suing for tortious interference[.]" And, "it is unreasonable to expect that [a] plaintiff [will] always . . . be in a position to allege specific facts regarding the third party's contractual rights or his motives for acting in a particular way." *J.D. Heiskell Holdings, LLC*, 750 F. Supp. 3d at 1296–97.

Mr. Dolin also proposes to tack on an intentional interference claim against Triad concerning his contract with his publisher. Doc. 11 at 9 ¶ 30. This proposed addition — set forth in a single paragraph — does not satisfy Rule 8 pleading standards and lacks allegations concerning the necessary elements of an intentional interference claim described above. Therefore, the Court finds that allowing leave to amend in this regard would be futile.

### III.    CONCLUSION

The Motion **[Doc. 6]** is **GRANTED** as to Plaintiff's federal civil rights, wrongful termination, and prima facie tort claims. The Motion is **DENIED** as to Plaintiff's claim for intentional interference with contract. Leave to amend the Complaint (Doc. 11) is **DENIED** except with respect to Plaintiff's intentional interference claim.

It is so ORDERED.

/s/

_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE